UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN RE GAME TRACKER, INC., ) | |
| ) | |
| Debtor ) | |
| _____ ) | |
| ERNEST EDWARDS, et al., ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | No. 2:10-cv-189-DBH |
| ) | |
| EASTMAN OUTDOORS, INC., et al., ) | |
| ) | |
| Defendants ) | |

*MEMORANDUM DECISION AND ORDER ON MOTION* IN LIMINE

Pursuant to my order of March 22, 2011, *see* Report of Hearing and Order re: Status (Docket No. 51), the defendants filed a motion *in limine* regarding whether comparative negligence applies in this case in its current posture, *see* Defendant[s'] Motion *in Limine* on the Applicability of Comparative Fault and Proximate Cause After Default ("Motion *in Limine*") (Docket No. 52). For the reasons that follow, I grant the defendants' motion as limited herein.

**I. Background**

On July 8, 2004, Ernest and Karla Edwards, husband and wife, filed a complaint against Game Tracker, Inc. ("Game Tracker"), a Michigan corporation, and Wal-Mart, Inc. ("Wal-Mart"), alleging that, as a result of the malfunction of a Game Tracker safety hunting belt that Ernest Edwards had purchased from Wal-Mart, he fell approximately 17 feet from a tree stand while bow hunting in Minot, Maine, on October 11, 2002, sustaining serious injuries. *See* Complaint & Demand for Jury Trial ("Complaint") (Docket No. 1), *Edwards v. Wal-Mart, Inc.*,

1

No. 2:04-cv-145-DBH (D. Me.) ("*Edwards I*"), ¶¶ 7-12. The plaintiffs sought damages from Game Tracker on theories of strict liability, negligence, breach of warranty, and Karla Edwards' loss of consortium. *See id.* ¶¶ 35-55. Wal-Mart was dismissed from the action, *see* Docket Nos. 32, 34, *Edwards I*, and, because Game Tracker filed no timely answer, an entry of default was made against it at the plaintiffs' request, *see* Docket Nos. 7-8, *Edwards I*.

In December 2004, prior to Wal-Mart's dismissal, Wal-Mart and the plaintiffs filed a joint motion to stay *Edwards I* on account of Game Tracker's chapter 7 bankruptcy filing in the United States Bankruptcy Court for the Eastern District of Michigan ("Michigan Bankruptcy Court"). *See* Docket No. 21, *Edwards I*. That motion was granted. *See* Docket No. 23, *Edwards I*. On or about April 22, 2005, the plaintiffs obtained an order from the Michigan Bankruptcy Court vacating the automatic stay of any proceedings against Game Tracker to the limited extent of permitting Ernest Edwards to pursue his personal injury claims, so long as any recoveries for said claims were fully paid by proceeds of insurance. *See* Recommended Findings of Fact and Conclusions of Law ("2006 Recommended Decision") (Docket No. 46, *Edwards I*.) at 10. By order dated January 13, 2006, retroactive to April 22, 2004,[1] the Michigan Bankruptcy Court also permitted Karla Edwards to pursue her claims with the same condition, that any recoveries be fully paid by the proceeds of insurance. *See id.*

The plaintiffs filed a motion for default judgment against Game Tracker. *See id.* at 1. A damages hearing was held before Magistrate Judge David M. Cohen on November 15, 2005, at which no appearance was made by or on behalf of Game Tracker. *See id.* On January 20, 2006, Judge Cohen recommended that the court grant the motion, award Ernest Edwards the sum of

---

[1] The date appears so in the cited recommended decision. Presumably, this is a typographical error, and the order was retroactive to April 22, 2005. Nothing turns on any such error.

$1,764,931.23 on his claims against Game Tracker, and award Karla Edwards the sum of $200,000 on her consortium claim against Game Tracker. *See id*. at 15. Judge Hornby adopted the recommended decision, and the court entered a default judgment against Game Tracker in those amounts. *See* Docket Nos. 48-49, *Edwards I*. The plaintiffs commenced a reach and apply action in this court on March 14, 2006. *See* Docket No. 1, *Edwards v. Lexington Ins. Co.*, No. 2:06-cv-58-DBH (D. Me.) ("*Edwards II*"). Ultimately, they were unable to recover on any insurance policy in their reach and apply action. *See Edwards v. Lexington Ins. Co.*, 507 F.3d 35 (1st Cir. 2007).

Meanwhile, bankruptcy proceedings concerning Game Tracker continued in the Michigan Bankruptcy Court. In 2008, the Bankruptcy Trustee entered into a settlement agreement with the adversary defendants, Eastman Outdoors, Inc., Robert E. Eastman, II, Robert E. Eastman, III, and Erik E. Eastman ("Eastman defendants"), pursuant to which those defendants assumed full rights and responsibilities for all product liability claims that had been, or might be, asserted against Game Tracker or the bankruptcy estate, including the plaintiffs' claims. *See* Settlement Agreement, *In re: Game Tracker, Inc.* (Bankr. E.D. Mich.) (Docket No. 11-8), Exh. G to Debtor's Response to Creditors' Motion To Transfer Venue ("Debtor's Response/Venue") (Docket No. 11), at 3, ¶ 3.[2] The Eastman defendants' aggregate liability to all such product liability claimants was capped at $500,000. *See id*. at 3, ¶ 4. The Eastman defendants preserved and retained any and all defenses to such product liability claims. *See id*. at 3, ¶ 5.

---

[2] Game Tracker was dissolved on June 29, 2003, following which its defense was assumed by the Eastman defendants. *See* Debtor's Response/Venue at 5 & Exh. A (Docket No. 11-2) thereto. Prior to Game Tracker's dissolution, several of its assets were sold to Eastman Outdoors, Inc., an affiliated entity. *See* Debtor's Response/Venue at 5.

On January 14, 2009, the Eastman defendants initiated the instant adversary proceeding in the Michigan Bankruptcy Court, objecting to the plaintiffs' claim on the bases that Game Tracker was not liable, as its safety belt was not defective, and that there had been no binding liquidation of the amount of damages owed to the plaintiffs. *See* Objection to Claim No. 13 of Ernest and Karla Edwards, *In re: Game Tracker, Inc.* (Bankr. E.D. Mich.), included in Docket No. 1. Thereafter, the Michigan Bankruptcy Court recommended withdrawal of the reference of that adversary proceeding, *see* Docket No. 2, and the proceeding was transferred to the United States District Court for the Eastern District of Michigan, *see* Docket No. 4. On May 18, 2010, the proceeding was transferred to this court. *See* Docket Nos. 16-17.

On June 7, 2010, the Eastman defendants filed a motion to set aside the default against Game Tracker. *See* Docket No. 30. The following day, I held a status teleconference with counsel during which, *inter alia*, "all counsel agreed that, even if the default judgment previously entered is *not* set aside, Eastman will be entitled, nonetheless, to a hearing on damages, given the special, limited circumstances under which a judgment on damages was entered on the default in Docket No. 04-145-P-H." Docket No. 38 at 2 (emphasis in original).

On October 27, 2010, Judge Hornby denied the Eastman defendants' motion to set aside the default entered against Game Tracker. *See* Decision and Order on Motion To Set Aside Default (Docket No. 42) at 21. In so doing, he noted, *inter alia*: "There is no contention that the *damages* judgment is binding upon Game Tracker or the adversarial defendants." *Id*. at 3 n.1 (emphasis in original). On November 4, 2010, and December 21, 2010, I held two additional status conferences with counsel in which I set deadlines for discovery related to damages. *See* Docket No. 45, 49. On March 22, 2011, the day after the close of discovery, I held a fourth status teleconference during which counsel for the Eastman defendants raised the question of

whether comparative negligence properly is the subject of a damages hearing in a case in which the defendant has been defaulted. *See* Docket No. 51 at 3. I noted: "Both parties agreed that, if comparative negligence goes to damages, there will be a need for a damages hearing in this case, but that if it does not, the parties likely will be able to stipulate to the amount of damages, with preservation of appellate rights." *Id.*

## II. Discussion

### A. Maine Comparative Negligence Act

The Maine Comparative Negligence Act ("Maine Act") provides, in relevant part:

> When any person suffers death or damage as a result partly of that person's own fault and partly of the fault of any other person or persons, a claim in respect of that death or damage may not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof must be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.
>
> When damages are recoverable by any person by virtue of this section, subject to such reduction as is mentioned, the court shall instruct the jury to find and record the total damages that would have been recoverable if the claimant had not been at fault, and further instruct the jury to reduce the total damages by dollars and cents, and not by percentage, to the extent considered just and equitable, having regard to the claimant's share in the responsibility for the damages, and instruct the jury to return both amounts with the knowledge that the lesser figure is the final verdict in the case.
>
> Fault means negligence, breach of statutory duty or other act or omission that gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence.
>
> If such claimant is found by the jury to be equally at fault, the claimant may not recover.

14 M.R.S.A. § 156.

The Eastman defendants contend that the Maine Act permits a defaulted defendant to raise a claim of contributory negligence at a damages hearing, a proposition for which they cite (i) a statement by Judge Hornby in *Edes v. Fredson*, 344 F. Supp.2d 209 (D. Me. 2004),

concerning the application of the Maine Act in the event of a default, (ii) the language of the Maine Act, as well as cases construing it, and (iii) caselaw from New Mexico, Wyoming, and Ohio holding that a defaulted defendant may adduce evidence at a damages hearing bearing on comparative negligence. *See* Motion *in Limine* at 3-9.

The plaintiffs rejoin that the Maine Act does not permit the raising of a comparative negligence claim by a defaulted defendant at a damages hearing, a proposition for which they rely primarily on the language of the Maine Act and caselaw construing it. *See* Plaintiffs' Objection to Defendants' Motion *in Limine* Regarding Comparative Fault ("Plaintiffs' Response") (Docket No. 54) at 1-5. They argue that (i) Judge Hornby's comment in *Edes* is non-binding dictum, (ii) there is no controlling authority on point, (iii) the caselaw cited from other jurisdictions is irrelevant, and, (iv) in any event, there is a split of authority among other jurisdictions, with courts in Massachusetts, Rhode Island, Georgia, and Pennsylvania holding that a defaulted defendant is barred from raising a comparative negligence defense. *See id*. at 2 n.1 & 5.

In concluding that he should order the removal of an entry of default against the defendant, Judge Hornby observed in *Edes*:

> My major concern is with the defendant's failure to put forth or even to suggest a meritorious defense. There is no reason to remove default in a case where there is no meritorious defense. In another case, that failure might well suffice to deny removal of the default. But given that Maine is a comparative negligence state, liability does not exist in a vacuum. It is exceedingly likely that any hearing on damages (a necessary event even if default establishes liability) will have to compare the conduct of the plaintiff against the conduct of the defendant. I conclude, therefore, that this is a case where the default should be lifted notwithstanding the defendant's failure to put forth a meritorious defense.

*Edes*, 344 F. Supp.2d at 213 (citations omitted).

Even assuming, as the plaintiffs contend, that these observations are non-binding dictum, I conclude, after careful review of the Maine Act and caselaw construing it, that Judge Hornby correctly characterized that act as contemplating a comparative negligence analysis not only at the liability stage but also at the damages calculation stage of litigation.

As the Law Court has observed:

> Maine's statute differs from the comparative negligence statutes of other jurisdictions. The other statutes expressly reduce the amount of damages by the plaintiff's proportionate share of negligence. For example, the Massachusetts comparative negligence statute provides that "any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made."

*Pelletier v. Fort Kent Golf Club*, 662 A.2d 220, 223 (Me. 1995) (quoting Mass. Gen. Laws Ann. ch. 231, § 85). By contrast, in Maine, "[t]he plain meaning of the statutory language allows a jury to award damages in disproportion to its determination of liability." *Id*. "Section 156 not only provides that the jury should reduce the damage award 'to the extent deemed just and equitable,' it also dictates that the jury should not be governed by percentages in reducing a damage award." *Id*. *See also Rodgers v. American Honda Motor Co*., 46 F.3d 1, 1 (1st Cir. 1995) ("In 1965, in line with the growing concern over the fatal consequence of contributory negligence, the Maine Legislature enacted a statute permitting recovery, but reduced damages, in cases where a plaintiff, though negligent, was less so than the defendant. Although there were a variety of state statutes in effect, the Legislature chose the English one essentially word for word. The statute is unique, and we are not to look for enlightenment to decisions in sister states.") (citations omitted).[3]

---

[3] Like Massachusetts, all of the other jurisdictions whose caselaw is cited by the parties provide for the reduction of damages in an amount directly proportional to the causative fault of the plaintiff or person for whose injury, damage, or death recovery is made. *See* Ga. Code Ann. § 51-12-33(a); Ohio Rev. Code Ann. § 2315.33; Pa. Cons. Stat. Ann.
(*continued on next page*)

As the Law Court elaborated in a 1980 case:

[T]he proper application of the Maine Comparative Negligence Act requires that a jury, in deciding a tort-related case, process the evidence through two separate and distinct procedures, the first which may be viewed as the liability phase of the process, and the second phase which involves the just and equitable apportionment of the damages between mutually blameworthy parties.

The Act . . . demands from the jury that the respective fault of the parties be compared both in the liability phase of the process as well as in the apportionment-of-the-damages phase, but under different microscopic lenses.

In the liability phase the comparison must focus solely upon the legal causative contributing effect of the respective fault of the parties to the claimant's injury. The jury must initially measure the quantum of the causative impact of the improper conduct of the parties to determine whether the defendant must respond in damages to any degree, which the Maine Act conditions on a finding by the jury that the claimant is not equally at fault.

***

Once the defendant's liability has been determined after the jury's comparison of the relative causative fault of the parties, the jury then must, pursuant to the provisions of the statute, in the apportionment-of-the-damages phase of their deliberations, reduce "the total damages by dollars and cents, and not by percentage, to the extent deemed just and equitable, having regard to the claimant's share in the responsibility for the damages."

---

§ 7102(a); R.I. Gen. Laws Ann. § 9-20-4; Wyo. Stat. Ann. § 1-1-109(b), (d)-(e); *Burge v. Mid-Continent Cas. Co.*, 933 P.2d 210, 217 (N.M. 1996) ("The law of comparative negligence in New Mexico requires the trier of fact determine negligence proportionately, and holds that a tortfeasor be held liable for damages only to the extent of his percentage of negligence.") (citations and internal punctuation omitted). As a result, in those jurisdictions, the single critical comparative negligence decision is made during the liability phase of trial. Presumably for that reason, some courts in those jurisdictions have barred defaulted defendants from raising the defense of comparative negligence at a damages hearing. *See, e.g., Rodriguez v. Parks & Woolson Mach., Co.*, Civil Action No. 1997-0831, 2007 WL 2080544, at *5 (Mass. Super. Ct. July 10, 2007) ("To allow the defaulted party not only to contest damages in a case such as this, but to litigate the issue of comparative negligence at a Rule 55(b)(2) assessment of damages hearing would distort the nature of the hearing by expanding it from the subject of damages to the subject of liability in contravention of Rule 55(b)."); *Thomas v. Duquesne Light Co.*, 545 A.2d 289, 295 (Pa. Super. Ct. 1988), *aff'd*, 595 A.2d 56 (Pa. 1991) ("The doctrine of comparative negligence, even though it goes in part to the assessment of damages, is primarily a substantive defense going to a plaintiffs' right to recover and, therefore, is not available as a defense to a defendant against whom a default judgment has been entered."). Even assuming *arguendo* that the cases cited by the plaintiffs, in contrast to those cited by the Eastman defendants, correctly analyze the impact on a defaulted defendant of this type of comparative negligence provision, that provision is materially different from that of Maine.

> The paramount purpose of the statutory mandate is the achievement of justice and equity between the parties under all the circumstances of the case. The relative fault of the parties as determined in connection with the liability issue is, of course, a relevant factor which may be considered by the jury in its apportionment of the damages. But it is not conclusive.

*Jackson v. Frederick's Motor Inn*, 418 A.2d 168, 172-74 (Me. 1980) (citation omitted).

Importantly, because of the distinctive nature of the analyses involved in the liability phase as opposed to the apportionment-of-the-damages phase, the Law Court has upheld the validity of verdicts in which juries determined, in the liability phase, that a plaintiff was not at least equally at fault but, in the apportionment-of-the-damages phase, reduced his or her damages by amount equaling more than 50 percent of the total damages found. *See Pelletier*, 662 A.2d at 221, 224; *Jackson*, 418 A.2d at 173-74.

### B. Application of the Maine Act to Default Judgment

With this understanding, I turn to the paradigm of default judgment. "While a default . . . constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is susceptible of mathematical computation." *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19 (1st Cir. 2003) (citation and internal punctuation omitted).

As viewed through the lens of the Maine Act, Game Tracker's default precludes the Eastman defendants from raising the comparative negligence issue that would have been decided in the liability phase: whether plaintiff Ernest Edwards was at least equally at fault in causing the fall from a hunting tree stand that led to his injuries, thus barring any recovery. That point has been decided adversely to Game Tracker by virtue of its default.

Nonetheless, the default does not preclude the Eastman defendants, in Game Tracker's stead, from raising the separate comparative negligence issue that arises in Maine during the apportionment-of-the-damages phase: whether, on principles of justice and equity, the total

9

damages recoverable should be reduced on account of the plaintiff's fault, and, if so, by how much in dollars and cents, having regard to the plaintiff's share in the responsibility for the damages.

The plaintiffs argue against this construction of the Maine Act primarily on four bases, none of which I find persuasive:

1. That, under the Maine Act, "comparative negligence is relevant to the damages phase of a trial only to the extent that the party was determined to be comparatively negligent in the liability phase[,]" Plaintiffs' Response at 2;

2. That "[t]he comparative negligence statute does not, as Defendants suggest, allow a defendant to introduce new facts after the liability phase of the case to establish a plaintiff's comparative fault[,]" *id*. at 4;

3. That the allegations of the plaintiffs' complaint, which are taken as true following a default, and the findings of fact adopted by this court following the 2006 damages hearing in *Edwards I*, are inconsistent with any finding that the plaintiff was comparatively negligent, establishing instead that Game Tracker bears sole responsibility, *see id*. at 1-4; and

4. That Maine does not permit a defaulted defendant to engage in discovery relating to damages unless necessary to prevent fraud and error, *see id*. at 5.

With respect to the first point, the plaintiffs cite no caselaw holding that, under the Maine Act, a finding of comparative negligence *must* be made during the liability phase to open the door to the apportionment of damages. Instead, the Law Court instructs that, during the liability phase, "[t]he jury must initially measure the quantum of the causative impact of the improper conduct of the parties *to determine whether the defendant must respond in damages to any degree*, which the Maine Act conditions on a finding by the jury that the claimant is not equally

10

at fault." *Jackson*, 418 A.2d at 173 (emphasis added). While, of course, no actual comparative fault finding was made by a trier of fact in this case, Game Tracker's default fairly can be construed as having established, for purposes of the liability phase, that Ernest Edwards was less than 50 percent at fault and, hence, that Game Tracker is liable to respond in damages to some degree. That liability phase determination, in turn, is relevant but "not conclusive" in the apportionment-of-the-damages phase. *See, e.g., id*. at 174.

With respect to the second point, the Maine Act is silent on the question of the timing of the introduction of evidence bearing on comparative negligence. *See* 14 M.R.S.A. § 156. Basic principles of default judgment jurisprudence typically do preclude the introduction, at a damages hearing, of evidence going to liability, but they do not preclude the introduction of evidence bearing on damages. *See, e.g., Bonilla v. Trebol Motors Corp*., 150 F.3d 77, 82 (1st Cir. 1998) ("The ordinary rule is that a defaulting defendant is entitled to contest damages and to participate in a hearing on damages, should one be held."); *compare, e.g., Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 23 (1st Cir. 2006) ("[U]nlike other defaults, the court's default order did not result in entry of a liability judgment with only damages to be determined. Rather, the court allowed the case to go to the jury on liability and damages, and permitted plaintiffs to present evidence of both.") (footnote omitted). Applying those principles to this case, the Eastman defendants may present evidence at a damages hearing bearing on the apportionment-of-the-damages phase of litigation under the Maine Act, but not on the liability phase.[4]

With respect to the plaintiffs' third point, while the allegations of the complaint establish Game Tracker's liability, they do not establish the plaintiffs' damages. *See generally* Complaint,

---

[4] I realize that there may be significant overlap in these two spheres of evidence. However, evidence may not be introduced solely for the purpose of proving that the plaintiffs are barred from recovery because Ernest Edwards was at least equally at fault in his fall from the tree stand in 2002.

11

*Edwards I*; *see also, e.g., KPS*, 318 F.3d at 19. As discussed, so long as a plaintiff's fault is not equal to or greater than that of a defendant, the Maine Act permits an allocation at the apportionment-of-the-damages phase that is not slavishly tied to the percentage of causative fault found during the liability phase. To the extent that the plaintiffs mean to suggest that the 2006 default judgment in *Edwards I* is binding on the Eastman defendants in this case, that represents a turnabout from their earlier position that "even if the default judgment previously entered is *not* set aside, Eastman will be entitled, nonetheless, to a hearing on damages, given the special, limited circumstances under which a judgment on damages was entered on the default in Docket No. 04-145-P-H." Docket No. 38 at 2 (emphasis in original). They neither explain their seeming change in position nor offer any cogent argument as to why the Eastman defendants are precluded, in the circumstances presented, from litigating the damages issue. *See Davignon v. Clemmey*, 322 F.3d 1, 17 (1st Cir. 2003) ("[T]he burden of establishing the affirmative defense of *res judicata* rests upon the proponent.").

Finally, with respect to the fourth point, Federal Rule of Civil Procedure 55 broadly empowers this court to "conduct hearings . . . when, to enter or effectuate [a default] judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

To the extent that state-law precepts inform the question of the proper scope of discovery and participation in a damages hearing by a defaulted defendant in a diversity jurisdiction case such as this, I perceive no inconsistency between Maine law and the instant determination. The Law Court instructs that, in exercising its discretion, "a trial court should decide the scope of the [defaulted] defendant's participation necessary and proper to determine the damages[,] and the

court should be alert that no fraud is perpetrated on the court and that the chance for error in setting damages is kept to a minimum." *Boit v. Brookstone Co.*, 641 A.2d 864, 866 (Me. 1994) (citation and internal punctuation omitted). The Law Court observes, "[T]he greater the complexity of the evidence required to prove the damages at issue, the greater the likelihood that discovery and participation in the damage hearing will be required to prevent fraud and error." *Id.* (footnote omitted).

The Eastman defendants represent that they have expert evidence demonstrating that Ernest Edwards was at least partially at fault for his injuries. *See* Motion *in Limine* at 2-3. As discussed, the Maine Act contemplates the allocation of damages as a separate determination, distinct from the determination of causative fault. Game Tracker's default does not preclude the introduction of evidence bearing on the apportionment-of-the-damages phase, and the introduction of such evidence will tend to prevent error in the damages calculation.

### III. Conclusion

For the foregoing reasons, I **GRANT** the Eastman defendants' motion *in limine* within the parameters delineated herein. I also **DIRECT** the Clerk's Office to schedule, at the earliest convenience of the parties and the court, a status teleconference with counsel during which the parties shall be prepared to discuss (i) the scheduling of a damages hearing, including the anticipated length of said hearing and anticipated witnesses and documentary evidence, (ii) the scheduling of pre-hearing filings, such as witness and exhibit lists, and pre-hearing memoranda, and (iii) whether there are any additional unresolved legal issues.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to any further appeal of this order.*

Dated this 28th day of July, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge